UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x

| | |
|---|---|
| ROSE MEDINA, | 22-CV-8682 |
| Plaintiff, | COMPLAINT |
| - against - | JURY DEMAND |
| DAVITA INC., BRONX RIVER NEPHRO CARE, KNICKERBOCKER DIALYSIS INC., and SUMEET RANA, | |
| Defendants. | |

------------------------------------------------------------------x

Plaintiff Rose Medina, appearing by her attorneys, MANGAN LOUIS LLP, hereby

alleges against the defendant as follows:

## I.   PRELIMINARY STATEMENT

1.      In this civil rights action brought pursuant to the Age Discrimination in

Employment Act of 1967, as codified, 29 U.S.C. §§ 621 to 634, the New York State

Human Rights Law (Exec. L. § 290 et. seq.)**,** and the New York City Human Rights Law

(Admin. Code tit. 8-101 et seq.) plaintiff Medina Rose, was a sixty-one (61) year-old

Facility Administrator for defendants, a managerial position she held for eighteen (18)

years, and was subject to unlawful harassment, hostile work environment, and was

unlawfully terminated by defendants on the basis of her age. Rose seeks damages to

redress the deprivation of rights against the defendants for their discriminatory conduct.

## II.      JURISDICTION

2.      The Court has jurisdiction over this action under 28 U.S.C. § 1331, 28 U.S.C. §

1343(3) and (4), the Age Discrimination in Employment Act of 1967, as codified, 29

U.S.C. §§ 621 to 634, and has Supplemental Jurisdiction over plaintiff's state law claims

under 28 U.S.C. §1367. Plaintiff filed charges with the Equal Employment Opportunity

Commission and received a Notice of Right to Sue on or about July 18, 2022, and has

commenced this action within 90 days of receipt of the Notice of Right to Sue.

### III. PARTIES

3.        Plaintiff Rose Medina, an individual who was a resident of Bronx County, in the

State of New York at all relevant times, was born in 1960 and was a 61-year-old when

she was last employed by and worked for defendant Davita, Inc. through its divisions of

Bronx River Nephro Care ("Bronx River") and Knickerbocker Dialysis Inc.

("Knickerbocker") until her termination on March 12, 2021.

4.        Defendant Davita, Inc. ("Davita") is, upon information and belief, a large, multi-

national provider of outpatient dialysis centers. Davita's headquarters is located at 2000

16th Street, Denver, Colorado 80202 and has thousands of employees.

5.        Defendant Bronx River Nephro Care ("Bronx River") is, upon information and

belief, a wholly owned subsidiary of Davita, and has had more than twenty employees

during all relevant periods of time. Upon information and belief, Davita purchased Bronx

River on or about September 2017.

6.        Defendant Knickerbocker Dialysis Inc. ("Knickerbocker") is, upon information

and belief, a wholly owned subsidiary of Davita, and has had more than twenty

employees during all relevant periods of time.

7.        Sumeet Rana is an individual, who at all relevant times was an employee of

Davita, serving as Regional Manager of the area that included Bronx River and

Knickerbocker beginning in October 2019, and was Rose Medina's direct supervisor and

was directly responsible for harassing, retaliating against, and terminating Rose on the

basis of her age.

IV. FACTS

8.      Rose Medina had worked as a manager of dialysis centers, including those owned

and operated by Davita, for more than thirty (30) years. After graduating from college,

Rose and received her master's degree in Health Administration in 1984.

9.      Rose was hired by Bronx River as a Facility Administrator in 2002, and for

approximately eighteen (18) years, Rose served to manage the Bronx River facility and

for the other defendants since Davita acquired Bronx River. Rose was competent at her

job in managing Bronx River, later in her roles for Davita and Knickerbocker, and always

received positive reviews from her supervisors.

10.     In or about October 2019, Davita hired defendant Sumeet Rana as a Regional

Manager for the region that included the Bronx River facility and became Rose's direct

supervisor. Upon information and belief, Ms. Rana had no prior experience in dialysis

services, healthcare or in management.

11.     At the earliest stages of their work relationship, as soon as Rana was hired by

Davita to serve as Rose's supervisor, Rana was dismissive of Rose, and spoke to

dismissively and about her negatively to other Davita employees, based on Rose's age.

12.     In January 2020, Rana assigned Rose as the manager of a new unit that was

brought into her region.

13.     In March 2020, soon after the New York area was struck by the Covid-19

pandemic, the new facility managed by Rose became the only cohort for Covid-19

positive patients in the Bronx. Rose became primarily responsible for positive Covid-19

unit as well as the main unit at Bronx River.

3

14.     Due to the Covid-19 disease, it was difficult for Rose and Davita to adequately

staff the new positive Covid-19 unit. Rose expressed these concerns to Rana and even

though they told her that staffing the new unit was not her sole responsibility, Rose was

not provided any assistance from Rana or Davita management.

A.     Hostile Work Environment.

15.     Beginning in August of 2020, at the height of the Covid-19 pandemic, Ms. Rana

met with Rose regarding the lack of staff for the new unit. When Rose explained that

there was a difficulty in finding and retaining staff members due to their fears of

becoming infected with Covid-19, Rana became visibly upset and told Rose that her

staffing needs were not Rana's problem. During this meeting, still upset with Rose, Ms.

Rana talked to Rose about her age and suggested that Rose was no longer capable of

performing as a manager due to her age. Rana chided Rose: "Why don't you retire?

You're at the age for retirement."

16.     From this point forward, when Rana spoke to or met with Rose, she would harass

her about retiring and state that she needed a "young team with new ideas." Rana would

continually refer to Ms. Medina's length of time at the unit and how she did things as

"the old way" and that state that Rose could not remember things due to her age.

17.     In September 2020, Rana accused Rose of causing or mishandling payroll at

[Bronx River], and at a meeting between them concerning the payroll issue, Rana told

Rose that she was "unable to remember things due to [her] age."

18.     In October 2020, Rana announced that Rose would no longer be responsible for

the Covid-19 unit, although there had not been a Covid-19 patient in a month.

19.     Later, in November 2020, Rana told Rose that the reason why she had not come

to her unit for over one and a half month was because she did not want to deal with her. It

was clear to Rose from this statement, and from the other dealings and insults she had

suffered from Rana, that Rana was open about her animosity towards her. At or about this

time, Rana stated that she wanted to schedule weekly check-ins with Rose to monitor her

management. It was from this point forward that at all, or nearly all, meetings, Rana

would Rose whether she was "ready to retire?"

20.     During a visit to Rose's unit in January 2021, Rana told her that she was going to

place her on a Performance Improvement Plan ("PIP"). This false disciplinary action

against Rose was intended to harass Rose and create a false record of discipline against

her. Then, for more than a month Rana did not address the PIP or discuss it any further.

During a phone call after this, Rana told Rose, again, that the way Rose was running the

unit was with "old ideas" and that she needed "fresh young ideas". She again asked Rose

when she was retiring.

21.     As a result of Rana's constant harassment, in February 2021, Rose decided to

look for an opportunity within the company to transfer locations. Rose, at this time, was

experiencing emotional harm due to Rana's animosity and constant harassment. Rose was

aware of Rana's intent to harass her and to cause her emotional distress and fear that she

would be terminated by Rana. Rose understood that Rana was taunting her to cause her

emotional injury.

22.     On February 12, 2021, Rana came to meet with Rose at the Bronx River facility,

and Rose told Rana that she was considering a transfer within Davita to a unit in Florida.

Rana stated that she was happy about Rose's decision and told her that she would help

her transfer. Rana asked the name of the Davita recruiter that Rose was working with and told her: "I will put in a good word for you, so the transfer can be smooth."

23.     Later that same day, Rose received a call from Davita employee Tamisha Prentice, a Group Facility Administrator, who told Rose that Rana was going to put a PIP in her account to stop Rose from transferring. Ms. Prentice told Rose: "I had to call you and let you know of [Rana's] intent because I can't have this on my conscious. Rose, protect yourself. I don't know how but find a way to protect yourself. She is looking to destroy you."

24.     Nonetheless, Rose continued with her plans to transfer, and scheduled her first interview with Davita's Florida group on February 18 and 19 of 2021.

25.     In a meeting between Rana and Rose on March 1, 2022, Rana asked her if intended to remain at Bronx River. Rose told Rana that she had an interview and was currently still considering a transfer to a Davita unit in Florida. Rose made it known that that the reason she was transferring was because she was aware of the fact that Rana did not want to work with Rose and had been criticizing Rose based on her age. Rose told Rana that she loved working at Bronx River that she had been there nearly 20 years and that she wanted to stay. Rana told Rose that if the transfer did not go through, she "strongly recommended" that Rose "retire with honor rather than getting fired."

B.      Retaliation.

26.     At or about that time, in early March, upon information and belief, Rana prevented Rose's transfer to another Davita unit in Florida. Rana knew that Rose had felt that she was harassed based on her age, and Rose made it clear to Rana that she wanted to move to another unit to escape Rana's constant harassment and threats. In retaliation for

6

seeking the transfer, which was a protected activity in opposition to the harassment, upon information and belief, Rana communicated with those employees of Davita responsible for authorizing the transfer in order to prevent Rose from transferring away from Rana's unit.

27.     Upon information and belief, Rana sought to prevent Rose from complaining about the treatment she received to any other Davita manager, and Rana sought to injure Rose's ability to be employed after Rose objected to Rana's discriminatory conduct.

C.     Unlawful Termination.

28.     On March 2, 2021, Rana met with Rose presented her with a final written notice. Rana told her: "I was going to give you a PIP but since you are still interested in staying at Bronx River, I think it's better for me to give you a final notice." She told Rose that she was incapable to run the unit and her team, based on her age. She stated that it was "no longer [Rose's] type of job" and that "perhaps when [Rose] was younger [she] was good, but not at [her] current age."

29.     On or about March 8, 2021, Rana visited Rose's unit and asked to speak with her. Stated to Rose that indicated that she did not think that Rose was going to be able to finalize all activities for an audit that was being conducted at the Bronx River facility, and stated, repeatedly, that Rose should reconsider retiring. Rana kept asking Rose, over and over, whether Rose would stay or leave. Each time Rose stated she would stay, Rana would tell her to rethink her answer. Rana stated that it was time for Rose to go, and that it was time for her to "realize that [she is] no longer good at this job." Rana said, "Maybe you were good at it a long time ago when you were younger, but not anymore. You should consider leaving with honor or I have the power to fire you." Rana finished by

7

saying "I will touch base with you next week and see if you have changed your mind about staying here."

30.     Rana knew that it was terminating Rose on the basis of her age was unlawful. Nonetheless, Rana openly admitted to Rose that she would lie about the reason for terminating her in order to avoid liability. Rana explained to her that she terminated another former Davita employee, a dietician, who was suing Davita for discrimination based on Rana's termination, but bragged that she was not worried about the dietician's lawsuit because she contrived an explanation for the termination by alleging the dietician used her phone too much.

31.     On Friday March 12, 2021, Rana met with Rose and told her she decided to fire her today. She told Rose: "Clean your office and give back any Davita property." Rana stated that the reason why Rose was being fired was due to missing doctor's orders in the chart. This explanation was false.

32.     Rana's reason for Rose's termination on March 12, 2021 was false and contrived, similar to the way in which Rana contrived a false explanation for terminating the former Davita dietician.

## V. CLAIMS

### FIRST CAUSE OF ACTION
#### AGE DISCRIMINATION IN VIOLATION OF THE ADEA

33.     Plaintiff incorporates paragraphs 1 through 32 as if fully set forth herein.

34.     Plaintiff was sixty-one (61) years old when she terminated by defendants on the basis of her age. At all times of her employment, she was highly qualified, respected, and competent in her job functions. Over the course of approximately eighteen (18) years, Plaintiff always received positive employment reviews until defendant Rana determined that she wanted to force plaintiff to resign.

35.     Defendants Davita, Bronx River and Knickerbocker intentionally and unlawfully discriminated against Plaintiff based upon her age by creating a hostile work environment, retaliating against her for trying to protect herself against the harassment preventing her from transferring to another Davita unit, and then unlawfully terminating her on the basis of her age. Plaintiff was subjected to a series of continuous adverse employment actions, as described above, including but not limited to unequal treatment on account of her age, discriminatory disciplinary actions, bullying and hostility on account of her age and unlawful termination.

36.     Plaintiff was at all times a high-performing employee and any claims of poor performance on behalf of Plaintiff are pretextual, false, factually baseless and without merit.

37.     Plaintiff was denied equal treatment in the terms, conditions and privileges of her employment on account of her age. Defendants treated other substantially younger employees differently than Plaintiff but for her age.

9

38.     On information and belief, Defendants exhibited a continuous pattern and practice

of age discrimination that had a disproportionate impact upon older employees.

39.     As a result of the unlawful discriminatory practices set forth above, Defendants

has denied Plaintiff her rights to equal employment opportunity in violation of the Age

Discrimination in Employment Act of 1967, as codified, 29 U.S.C. §§ 621 to 634.

40.     Plaintiff is entitled to damages in the amount of all lost wages and benefits

resulting from the unlawful termination of her employment, front pay, compensatory

damages for mental and emotional injuries, distress, and pain and suffering, as well as

liquidated damages, and attorneys' fees and costs, in amounts to be determined at trial.

## SECOND CAUSE OF ACTION
### AGE DISCRIMINATION IN VIOLATION OF THE NYSHRL

41.     Plaintiff incorporates paragraphs 1 through 40 as if fully set forth herein.

42.     Plaintiff was 61 years old when she terminated by defendants on the basis of her

age. At all times of her employment, she was highly qualified, respected, and competent

in her job functions. Over the course of approximately eighteen (18) years, Plaintiff

always received positive employment reviews until defendant Rana determined that she

wanted to force plaintiff to resign.

43.     Defendants Davita, Bronx River and Knickerbocker intentionally and unlawfully

discriminated against Plaintiff based upon her age by creating and maintaining a hostile

work environment, retaliating against her for trying to protect herself against the

harassment preventing her from transferring to another Davita unit, and then unlawfully

terminating her on the basis of her age. Plaintiff was subjected to a series of continuous

adverse employment actions, as described above, including but not limited to unequal

treatment on account of her age, discriminatory disciplinary actions, bullying and

hostility on account of her age and unlawful termination.

44.     Plaintiff was at all times a high-performing employee and any claims of poor

performance on behalf of Plaintiff are pretextual, false, factually baseless and without

merit.

45.     Plaintiff was denied equal treatment in the terms, conditions and privileges of her

employment on account of her age. Defendants treated other substantially younger

employees differently than Plaintiff but for her age.

46.     On information and belief, Defendants exhibited a continuous pattern and practice

of age discrimination that had a disproportionate impact upon older employees.

47.     As a result of the unlawful discriminatory practices set forth above, Defendants

has denied Plaintiff her rights to equal employment opportunity in violation of the New

York State Human Rights Law (Exec. L. § 290 et. seq.).

48.     Plaintiff is entitled to damages against defendants in the amount of all lost wages

and benefits resulting from the unlawful termination of her employment, front pay,

compensatory damages for mental and emotional injuries, distress, and pain and

suffering, as well as punitive damages, and attorneys' fees and costs, in amounts to be

determined at trial.

THIRD CAUSE OF ACTION
AGE DISCRIMINATION BASED IN VIOLATION OF NYSHRL

49.     Plaintiff incorporates paragraphs 1 through 48 as if fully set forth herein.

50.     Plaintiff was 61 years old when she terminated by defendants on the basis of her

age. At all times of her employment, she was highly qualified, respected, and competent

in her job functions. Over the course of approximately eighteen (18) years, Plaintiff

always received positive employment reviews until defendant Rana determined that she wanted to force plaintiff to resign.

51.     Defendants Davita, Bronx River and Knickerbocker intentionally and unlawfully discriminated against Plaintiff based upon her age by creating a hostile work environment, retaliating against her for trying to protect herself against the harassment preventing her from transferring to another Davita unit, and then unlawfully terminating her on the basis of her age. Plaintiff was subjected to a series of continuous adverse employment actions, as described above, including but not limited to unequal treatment on account of her age, discriminatory disciplinary actions, bullying and hostility on account of her age and unlawful termination.

52.     Plaintiff was at all times a high-performing employee and any claims of poor performance on behalf of Plaintiff are pretextual, false, factually baseless and without merit.

53.     Plaintiff was denied equal treatment in the terms, conditions and privileges of her employment on account of her age. Defendants treated other substantially younger employees differently than Plaintiff but for her age.

54.     On information and belief, Defendants exhibited a continuous pattern and practice of age discrimination that had a disproportionate impact upon older employees.

55.     As a result of the unlawful discriminatory practices set forth above, Defendants has denied Plaintiff her rights to equal employment opportunity in violation of the New York City Human Rights Law (Admin. Code tit. 8 et seq.).

56.     Plaintiff is entitled to damages against defendants in the amount of all lost wages and benefits resulting from the unlawful termination of her employment, front pay,

compensatory damages for mental and emotional injuries, distress, and pain and

suffering, as well as punitive damages, and attorneys' fees and costs, in amounts to be

determined at trial.

## FOURTH CAUSE OF ACTION
### AIDING AND ABETTING DISCRIMINATION UNDER THE NYSHRL AGAINST RANA

57.     Plaintiff incorporates paragraphs 1 through 56 as if fully set forth herein.

58.     Rana engaged in an unlawful discriminatory practice of aiding, abetting, inciting,,

compelling and coercing the above discriminatory conduct in violation of §§ 296 (1) and

(6) of the NYSHRL.

59.     Plaintiff seeks damages against Rana in the amount of all lost wages and benefits

resulting from the unlawful termination of her employment, front pay, compensatory

damages for mental and emotional injuries, distress, and pain and suffering, as well as

punitive damages, and attorneys' fees and costs, in amounts to be determined at trial.

## FIFTH CAUSE OF ACTION
### AIDING AND ABETTING DISCRIMINATION UNDER THE NYCHRL AGAINST RANA

60.     Plaintiff incorporates paragraphs 1 through 59 as if fully set forth herein.

61.     Rana engaged in an unlawful discriminatory practice of aiding, abetting, inciting,

compelling and coercing the above discriminatory conduct in violation of §§ 8-107(1)

and (6) of the NYCHRL.

62.     Plaintiff seeks damages against Rana in the amount of all lost wages and benefits

resulting from the unlawful termination of her employment, front pay, compensatory

damages for mental and emotional injuries, distress, and pain and suffering, as well as

punitive damages, and attorneys' fees and costs, in amounts to be determined at trial.

13

## SIXTH CAUSE OF ACTION
### NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

63.     Plaintiff incorporates paragraphs 1 through 62 as if fully set forth herein.

64.     The unlawful employment actions alleged herein were the direct result of the Defendants' actions negligently inflicting emotional distress, and Defendants knew or should have known that such distress was a likely result of their conduct.

65.     Plaintiff's allegations of employment discrimination caused by Defendants are so extreme and outrageous to as to offend the common decency of any similarly situated individual in her position. Defendants intentionally, and for the purpose of causing severe emotional distress, bullied and harassed Plaintiff in an extreme manner. No employee should be subjected to direct age discrimination of the type alleged here.

66.     Plaintiff complained about the defendants' conduct and it was known the other supervisory employees, but Defendants failed to cease the bullying and harassment, to correct or ameliorate the retaliation, prevent the termination, or to remedy the situation.

67.     Plaintiff suffered severe emotional and psychological injuries, as well as economic harm, as a direct and proximate cause of Defendants' actions, and will continue to suffer emotional, psychological and economic harm.

68.     Plaintiff is entitled to compensatory damages against the defendants for mental and emotional injuries, distress, and pain and suffering, as well as punitive damages, and attorneys' fees and costs, in amounts to be determined at trial.

## VI.     PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays:

1.      That this Court assume jurisdiction;

2.      That this Court award Plaintiff money damages as compensation for Plaintiff's

lost past wages;

3.      That this Court award Plaintiff money damages of as compensation for Plaintiff's

lost future wages;

4.      That this Court award Plaintiff punitive for the knowing, willful and intentional

disregard for Plaintiff's civil rights;

5.      That this Court award Plaintiff liquidated damages for the willful disregard of

Plaintiff's civil rights;

6.      That this Court award Plaintiff reasonable costs, disbursements and attorneys'

fees; and

7.      That this Court grant Plaintiff such other and further relief as may be proper.

Dated: New York, New York
        October 12, 2022

**MANGAN LOUIS LLP**

/s/

_____
By: Michael P. Mangan (MM-5773)
*Attorneys for Plaintiff Rose Medina*
80 Maiden Lane, Suite 1205
New York, New York 10038
(212) 248-2170